IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| LUIS ALONSO ARGUETA SAGASTUME, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:26-cv-3022 (AJT-WBP) |
| | ) | |
| MARKWAYNE MULLIN, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER**

Before the Court is Petitioner Luis Alonso Argueta Sagastume's Petition for Writ of Habeas Corpus, [Doc. No. 1] (the "Petition"). Petitioner argues that his prior Order of Supervision ("OSUP") was improperly revoked in violation of governing Department of Homeland Security (DHS) regulations, and his due process rights. Upon consideration of the Petition, [Doc. No. 1], the memoranda in support thereof, [Doc. No. 8], and in opposition thereto, [Doc. No. 7] and for the reasons stated herein, the Petition is **GRANTED**.

## I. BACKGROUND

Petitioner is a citizen and national of Honduras. [Doc. No. 1] ¶ 35. Petitioner first entered the United States in 2015 and was removed to Honduras the same year via expedited removal process. *Id.* Petitioner has a final order of removal. *Id.* ¶ 36; [Doc. No. 1-1]. Petitioner reentered the United States in June 2019 and was detained. [Doc. No. 1] ¶ 37. DHS released Petitioner on an OSUP on June 18, 2019. *Id.* ¶ 38; [Doc. No. 1-1]; [Doc. No. 7-1] ¶¶ 8-9. On August 21, 2026, Petitioner was arrested and served with an Intent/Decision to Reinstate Prior Order, Form I-871, and a Form I-205 Warrant of Removal/Deportation. [Doc. No. 7-1] ¶ 10. On August 23, 2026, Petitioner claimed fear of returning to Honduras and was referred to U.S. Citizenship and

Immigration Services (USCIS) for a Reasonable Fear Interview. *Id.* ¶ 11. The reasonable fear interview is pending scheduling. *Id.* On September 17, 2026, Petitioner was served with a Notice of Revocation of Release ("Notice of Revocation"), signed by Jose L Gurrero, Assistant Field Director. *Id.* ¶ 12; [Doc. No. 7-2]. The Notice of Revocation states that Petitioner's release was revoked pursuant to 8 C.F.R. § 241.4(l). [Doc. No. 7-2]. Petitioner is currently being detained at the Caroline Detention Center, in Bowling Green, Virginia. [Doc. No. 1] ¶ 45.

## II. LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted).

## III. DISCUSSION

Petitioner contends that the revocation of his OSUP violates the Immigration and Nationality Act's ("INA") implementing regulations and his due process rights. [Doc. No. 1] ¶ 47-55; [Doc. No. 8] at 2. In opposition, Respondents contend that Petitioner cannot seek relief in this District because he is a member of the non-opt out class of individuals covered by the nationwide injunction in *D.V.D. v. Department of Homeland Security*, 778 F. Supp. 3d 355, 2025 WL 1142968 (D. Mass. 2025), which the Supreme Court has stayed, that Petitioner's detention is fails to meet the *Zadvydas v. Davis*, 533 U.S. 678 (2001) presumptive six-month reasonableness standard, that Petitioner fails to demonstrate his removal is not "foreseeable," that Petitioner will be provided with the appropriate due process regarding third country removal screening, that Petitioner is not entitled to additional due process outside of *Zadvydas*, and that U.S. Immigration and Customs Enforcement (ICE) did not violate its own regulations when it re-detained Petitioner. [Doc. No. 7]

at 2.[1] [2]

Petitioner claims that the revocation of his OSUP violates the INA regulations, 8 C.F.R. § 241.4(l), and the *Accardi* doctrine, which requires an agency to follow its own procedures and regulations. *See Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008) ("[W]hen an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid.").

The INA's regulations create two different types of release following an order of removal. Under 8 C.F.R. § 241.4, "DHS may release a[] [noncitizen] under an order of supervision if it determines that the [noncitizen] would not pose a danger to the public or a risk of flight, without regard to the likelihood of the [noncitizen's] removal in the reasonably foreseeable future." *Garcia-Rivera v. Noem*, No. 1:26-CV-229-MSN-WBP, 2026 WL 1244545, at *2 n.3 (E.D. Va. Mar. 2, 2026) (quoting *Phommachak v. Wesling*, No. 25-13894-BEM, 2026 WL 157491, at *4 (D. Mass. Jan. 20, 2026)). Alternatively, DHS may release a noncitizen under 8 C.F.R. § 241.13 "based on a determination that there is no significant likelihood of removal to the country to which [the noncitizen] was ordered removed, or to a third country, in the reasonably foreseeable future." *Garcia-Rivera*, 2026 WL 1244545, at *2 n.3 (internal quotation marks omitted).

An OSUP under section 241.4 may be revoked where (1) the purposes of release have been served, (2) the noncitizen violates any condition of release, (3) it is appropriate to enforce a removal order or commence removal proceedings, or (4) the conduct of the noncitizen indicates

---

[1] Of note, Respondents fail to discuss any material differences between this Petition and *Benitez Pineda v. Noem et al.*, 1:25-cv-02337-AJT WBP, Doc. No. 17 (E.D. Va. Mar. 2, 2026), as directed by this Court's Order dated September 15, 2026, [Doc. No. 4].

[2] Because Petitioner only made one claim in his Petition—that DHS violated its own regulations when revoking Petitioner's OSUP—and because this Court now holds that the August 21, 2026 revocation notice was unlawful under the *Accardi* doctrine, the Court does not address the Respondents arguments under *Zadvydas*. Further, as Petitioner notes, *D.V.D.* does not address the issues relevant to Petitioner's claim—the procedural adequacy of his OSUP revocation. [Doc. No. 8] at 2. Multiple district courts, including this Court, have rejected identical arguments raised by Respondents on this basis. *See Portillo Sosa v. Noem, et al.*, No. 1:26-cv-522-AJT-WEF, Doc. No. 7 at 4–6 (E.D. Va. May 4, 2026); *Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *3 (D. Md. Sept. 8, 2025).

that release would no longer be appropriate. 8 C.F.R. § 241.4(l)(2). That regulation requires notifying the noncitizen of the "reasons for revocation of his or her release or parole" and afford the noncitizen "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.4(l)(1). As to who may exercise authority under § 241.4(l)(2), the regulations provide that either the Executive Associate Commissioner ("EAC") can exercise their discretion to revoke release, or a district director can revoke release in the limited circumstance where "in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.*

Respondents' September 17, 2026 attempted revocation notice does not comply with the procedural requirements set forth in 8 C.F.R. § 241.4(l). As was the case in *Hernandez Mendez*, a materially identical case, Respondents revoked Petitioner's OSUP in violation of the applicable regulations on August 21, 2026 when they detained him without the required notice, including the "reasons for revocation of his or her release or parole" and "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *See* Order, *Hernandez Mendez v. Mullin*, 1:26-cv-1881 (E.D. Va. Aug. 4, 2026), Dkt. No. 8. And the notice Respondents finally did provide Petitioner almost a month later on September 17, 2026, a day before Respondents' opposition was initially due before this Court, likewise failed to provide the "reasons for revocation of his or her release or parole" so that he could "respond to the reasons for revocation stated in the notification." *Id.* As this Court previously held, without any finding or explanation "as to why revocation of the order of supervision serves the public interest, or why circumstances did not reasonably permit referral of the case to the Executive Associate Commissioner . . . the Court cannot infer that to be

the case—nor is it required to do so—where the regulations require such a determination." *Serpas v. Simon*, No. 1:25-CV-02369-AJT-WBP, 2026 WL 1244544, at *5 (E.D. Va. Feb. 3, 2026) ("[T]he requirement that a senior official make the determination to revoke release—that is, to restrict a person's liberty—is not merely a housekeeping requirement but instead part of a procedural framework, designed to insure the fair processing of an action affecting an individual, a violation of which can be deemed to be prejudicial and thus to implicate due process.") (internal quotations omitted). Respondents' action of first detaining Petitioner despite his valid OSUP, which they only attempted to revoke almost a month later when Respondents' opposition to the Petition was due, further suggests that the revocation notice was effectuated as a "housekeeping requirement," as opposed to ensuring Petitioner was provided adequate due process.

For these reasons, the Court concludes that the August 21, 2026 revocation notice was unlawful under the *Accardi* doctrine.

## IV. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the Petition be, and the same hereby is, **GRANTED**; and it is further

**ORDERED** that Respondents' revocation of Petitioner's OSUP dated June 18, 2019 is VACATED, and Respondents shall release Petitioner from detention immediately with all his personal possessions and restore him to that prior OSUP; and it is further

**ORDERED** that Respondents are ENJOINED from re-detaining the Petitioner based on a revocation of his Order of Supervision without first complying in all respects with the applicable regulations concerning the revocation of his Order of Supervision, as identified herein, including stating in the Notice the specific factual basis for any claim of "change in circumstances," and if the stated change in circumstances relates to a significant likelihood of removal in the reasonably

foreseeable future, the factual basis for that claimed change, what efforts have been made to locate a country for removal, the name of that country and the authorizations received from that country for Petitioner's removal; and it is further

**ORDERED** that Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are ENJOINED from removing Petitioner from this judicial district and the continental United States unless (1) he has received a reasonable fear interview before a USCIS asylum officer; and (2) all other requirements of 8 C.F.R. § 208.31(g) have been satisfied.

The Clerk is directed to send copies of this Order to all counsel of record, and to terminate the case.

/s/
Anthony J. Trenga
Senior United States District Judge

October 7, 2026
Alexandria, Virginia